SOLOMON R. WASHER *et al.* v. V. E. BOND *et al.*

GAMBLING CONTRACT; *Province of Jury.* The question whether or not a grain deal is a gambling contract, is one to be determined by the jury, under proper instructions; and where it is submitted to and determined by a jury, and their finding is supported by some evidence, and is approved by the trial court, it will not be disturbed.

*Error from Harvey District Court.*

ACTION by *Washer & White* against *V. E. Bond* and another, to recover upon a promissory note for $1,000, made by defendants on April 4, 1884, due in four months after date, with interest, payable to the order of J. G. French, and by him indorsed and delivered to plaintiffs — said note having a credit thereon of $87.77; and also to foreclose a real-estate mortgage

given by the defendants to secure the payment of said note. Trial at the February term, 1886, and judgment for the defendants. The plaintiffs bring the case here. The material facts appear in the opinion.

*Smith & Solomon,* for plaintiffs in error.

*Ady & Henry,* for defendants in error.

Opinion by SIMPSON, C.: The first question to be determined is as to the nature of the contract. This is to be solved by its terms, and the statements of the parties, and their intentions as communicated to each other. If the contract is one that will not be enforced by the courts as being against public policy and void, it devolves upon the defendants in error to establish it. Their note and mortgage not only imply legality, but import a consideration, and the burden is upon them to show that they were executed and delivered in pursuance of an illegal contract, and therefore void. "There is no presumption that a contract is illegal. He who denies liability under a contract which he admits having entered into, must make the fact of its illegality apparent." (*McBratney v. Chandler,* 22 Kas. 692.)

It seems from all the witnesses who testified, that the arrangement made by the Bond brothers with French, as the agent of Washer & White, was, that the Bond brothers were to deal in options on the Chicago board of trade; their orders to be made through and by Washer & White, who were to receive a stipulated commission for the transaction of the business. It is fairly established that the Bonds had no intention of ever delivering the amount of wheat and corn that they sold, or of demanding the delivery of the amount they purchased. It is evident that they dealt in options of that variety that has been almost universally characterized by the courts as a gambling transaction. And it may be said with an equal degree of certainty, that Washer & White knew, from the frequency and magnitude of the deals, that the Bond brothers had no intention or expectancy that they should receive or

deliver the amounts of grain bought and sold on their orders. From the evidence preserved in the record, fairly considered, and viewed in the light of all the attending circumstances, the answer of the jury to the first special question seems to be fully justified. In their criticism upon this special finding, the counsel for the plaintiff in error assume that the jury relied solely for their conclusion upon the first interview that took place between the Bond brothers and French, the agent of Washer & White, and hence that there was nothing said in this interview that would justify the answer. We think this is too narrow a view, and we prefer to consider that the jury viewed the first interview, and what was said by the parties thereto, in the light of what each did in pursuance of the understanding then arrived at, and in fact, of all that followed that interview. As we view this evidence, and construe the acts and declarations of all parties, we have no doubt but that the special findings of the jury in this respect are amply supported by the evidence. Washer & White were not dealing at arms-length with the Bond brothers. Their agent, French, was on the ground. All orders were made through him at Newton, and transmitted by him to Washer & White at Atchison. French knew that the Bond brothers did not intend to deliver grain sold by them; knew that they did not have it on hand at the time they gave him orders for purchase and sale; knew their financial condition; knew that they could not purchase it for delivery; and his knowledge is and was the knowledge of Washer & White, his principals. They all knew that delivery could not be insisted on, and that the utmost obligation of the buyer or seller was to pay the differences. It seems to us that Bond brothers have established a plain case of that kind of dealing in options on grain that is everywhere denoted as gambling, and that the note and mortgage given to secure the losses accruing by such deals is illegal, without consideration, and void. All we have said has been in support of the verdict of the jury, for all the courts have left this question to be determined by the jury under proper instructions. This is one of that class of cases where the real struggle is against

a controlling fact. The fact established by the verdict is that the contract was a gambling one. There being evidence to support it, and the trial court having approved it, there could be no recovery; and all other errors are subordinate and immaterial.

It is recommended that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.